UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-460-GWU

CHRIS COUCH, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

06-460 Couch

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary,

3

778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Chris Couch, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of ongoing polysubstance abuse and dependence, borderline intellectual functioning, "rule out functional illiteracy versus illiteracy," and "rule out suboptimal effort/motive for secondary gain."  (Tr. 357-8).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Couch retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 362-5).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 46, eighth grade education but marginal literacy at best, and experience as a lumberyard worker and a mechanic, could perform any jobs if he were capable of "light" level exertion, and also had the following restrictions.  (Tr. 604-5).  He: (1) could stand and walk two hours in an eight hour day (15 to 30 minutes without interruption) and sit six hours in an eight hour day (no more than

one hour without interruption); (2) could never climb ladders, ropes, or scaffolds, crouch, kneel, or crawl; (3) occasionally climb ramps or stairs; and (4) he was unable to carry out complex oral instructions. (Tr. 605-6). Otherwise, his ability to make occupational adjustments was somewhat limited but satisfactory overall. (Tr. 606). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the local, state, and national economies. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff had filed a prior application for SSI as well as for Disability Insurance Benefits, which had been denied in an ALJ decision of April 30, 2004. (Tr. 13-25). This court affirmed the administrative decision in a Memorandum Opinion and Order dated May 31, 2005. Couch v. Barnhart, London Civil Action No. 04-368-GWU (E.D. Ky.). The ALJ in the present action found that there had been no significant change in the claimant's condition since the previous final decision, and found that Mr. Couch had the same physical and mental restrictions which had been affirmed by this court as being supported by substantial evidence. (Tr. 358).

Mr. Couch alleged disability in his current application due to lower back pain, pulled ligaments in his left knee, and lack of education. (Tr. 450).

Regarding Mr. Couch's physical condition, new evidence was submitted reflecting some emergency room visits for a swollen left knee, but x-rays showed

only swelling and no acute fracture or dislocation. (Tr. 494, 496, 501, 510-13). There was also an emergency room admission for a twisted right ankle, which was diagnosed as a sprain. (Tr. 505). No functional restrictions are suggested.

Mr. Couch underwent a consultative physical examination by Dr. Takasha Stewart-Hubbard on July 10, 2004, at which time he was ambulating on crutches due to complaints of back and knee pain associated with falling. (Tr. 484). The physician noted, as part of her background questioning, that Mr. Couch was drinking "a case of alcohol" per weekend. (Tr. 485). He apparently had severe pain in his left ankle, which had a reduced range of motion, and the right knee also was painful on range of motion testing. (Id.). Most of his ranges of motion were normal, however, and there were no neurological abnormalities, and no muscular atrophy. (Tr. 485-6). Vision in his right eye was tested as 20/70 without glasses. The left eye was 20/30. (Tr. 485). Dr. Stewart-Hubbard concluded that Mr. Couch truly appeared to be in pain and this might cause some mild to moderate impairment of his activities, but he would benefit from being evaluated by a physician to determine a specific cause for the problem. (Tr. 486). She suggested unspecified limitations in lifting, carrying, standing, walking, sitting, pushing, pulling, and postural functions due to the knee problem. (Id.).

Dr. Mark Burns conducted a consultative examination on January 29, 2005. (Tr. 514). At this point, Mr. Couch had glasses and tested vision was 20/20 in both eyes. (Tr. 515). Nor was he using a cane or other assistive device for ambulation.

(Tr. 517). Dr. Burns's examination showed no back tenderness or spasm, normal motor strength and reflexes, and no limitation of ranges of motion. (Tr. 516). Mr. Couch could heel, toe, and tandem walk and knee squat without difficulty. (Id.). X-rays showed a normal right knee and small bony fragments in the left knee which did not appear to be an "acute finding." (Tr. 518). Dr. Burns concluded that Mr. Couch had a normal physical and orthopedic evaluation. (Tr. 516).

A state agency physician who reviewed the evidence concluded that the plaintiff did not even have a "severe" impairment. (Tr. 561).

Since Dr. Stewart-Hubbard and Dr. Burns were both one-time examiners, the ALJ could reasonably have relied on Dr. Burns's conclusion that the plaintiff would have no physical restrictions. The ALJ gave the plaintiff the benefit of the doubt in imposing the physical limitations from the prior final decision.

Psychologically, the ALJ also adopted essentially the mental restrictions from the prior decision. The plaintiff contests this finding, as well as the ALJ's determination that drug and alcohol abuse was material to the decision. (Tr. 358).

The plaintiff testified at the February 7, 2006 administrative hearing that he had not used drugs or alcohol since being married approximately one and one-half years before. (Tr. 589, 591, 600). As previously noted, he had reported continued alcohol use to Dr. Stewart-Hubbard on July 10, 2004 (Tr. 485), and he reported daily marijuana use to a psychological examiner, Dr. Christopher Catt, on July 28, 2004 (Tr. 488). Although the plaintiff may have stopped using drugs and alcohol

7

after these two examinations, they did take place at times relevant to his current application, filed on June 8, 2004. Moreover, Dr. Catt's diagnoses included substance-induced mood disorder, alcohol dependence, and marijuana abuse. (Tr. 491). Thus, there is substantial evidence from which the ALJ could have concluded that drug and alcohol use were material factors. Under Public Law 104-121, limitations related to drug and alcohol use cannot be the basis for a finding of disability. Although Dr. Catt indicated that Mr. Couch would have a "marked" limitation in his ability to withstand the stress and pressure of day-to-day employment (Tr. 492) and the state agency reviewing psychologist also found limitations in certain areas not included in the hypothetical question (Tr. 537-9, 556-8), the sources did not specify limitations that would exist in the absence of drug and alcohol abuse. Therefore, the plaintiff failed to carry his burden of showing that he would be more limited in his mental functioning than was determined in the final, prior decision.

The plaintiff also maintains that he meets or equals the Commissioner's Listing of Impairment 12.05C due to mild mental retardation. The plaintiff cites a psychological examination from the prior application by Psychologist Mary Allen Genthner, which had produced IQ scores below 70 and which the psychologist had judged were valid. (Tr. 275, 565). As the court noted in its prior Memorandum Opinion, the ALJ in the 2004 administrative decision had obtained testimony from a psychological medical expert (ME), who cited school records not available to

06-460 Couch

Genthner which included IQ scores of 77 and 78 in the seventh and eighth grades. (Tr. 110-11, 320).  The ME had concluded that the plaintiff had not shown significantly subaverage general intellectual functioning with deficits in adaptive functioning before age 22 as required by the Listing.  Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001).  In view of this evidence, as well as the impression of borderline intellectual functioning by Mr. Catt at his July, 2004 evaluation (Tr. 491), the contention that the plaintiff meets Listing 12.05C is clearly without merit.[1]

The decision will be affirmed.

This the 8th day of August, 2007.



**Signed By:**
*G. Wix Unthank*
**United States Senior Judge**

---

[1] Mr. Catt had obtained a full scale IQ score of 64 but stated that the plaintiff needed glasses and it appeared that this affected his results. (Tr. 490). Even if the scores obtained by Mr. Catt were judged to be valid, the plaintiff still would not have shown deficits in adaptive functioning prior to age 22.